UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FRANK BOGUES,                           :
                    Plaintiff,          :
                                        :      09 Civ. 377 (DLC)
          -v-                           :
                                        :      OPINION & ORDER
THE UNITED STATES OF AMERICA,           :
                    Defendant.          :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff:

Andrew D. Himmel
Himmel & Bernstein, LLP
928 Broadway, Suite 1000
New York, New York 10010

For Defendant:

Brandon H. Cowart
Assistant United States Attorney
United States Attorney's Office for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007


DENISE COTE, District Judge:

     Plaintiff Frank Bogues ("Bogues") brings this medical

malpractice action against the United States pursuant to the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-

2680.  In March 2003, Bogues sought medical treatment from the

Ryan/Chelsea-Clinton Community Health Center (the "Ryan/Chelsea

Center") and Dr. Paulette Stewart ("Dr. Stewart").  Bogues

alleges that he received negligent medical treatment.  In July 2005, Bogues sued Dr. Stewart and the Ryan/Chelsea Center for medical malpractice in New York Supreme Court.  Pursuant to 28 U.S.C. § 2679(d), the United States Attorney for the Southern District of New York certified that the Ryan/Chelsea Center and Dr. Stewart were "deemed" to be employees of the Public Health Service under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g), and were acting within the scope of their employment at the time they provided medical treatment to Bogues.  Bogues' case was removed to federal court, the United States was substituted as the defendant, and the case was dismissed for failure to exhaust administrative remedies.  After the administrative process proved fruitless, Bogues filed the instant action against the United States pursuant to the FTCA.  Evidence obtained in initial discovery subsequently revealed that the Ryan/Chelsea Center and Dr. Stewart were never properly "deemed" to be federal employees at the time of Bogues' treatment in March 2003.  Accordingly, Bogues' claims under the FTCA are dismissed for lack of subject matter jurisdiction.


BACKGROUND

    Subject matter jurisdiction in this FTCA action hinges on whether the Ryan/Chelsea Center and Dr. Stewart were "deemed" to be employees of the Public Health Service at the time of Bogues'

2

medial treatment in March 2003.  A discussion of the statutory and regulatory framework governing the deeming process for federally funded health centers is thus an appropriate place to begin.

1.   Statutory and Regulatory Framework

Under § 224 of the Public Health Service Act of 1944 (the "PHSA"), the remedies provided under the FTCA are the exclusive means for resolving tort claims against employees of the Public Health Service acting within the scope of their employment.  See 42 U.S.C. § 233(a).  The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), Pub. L. No. 102-501, 106 Stat. 3268 (1992), amended § 224 of the PHSA to extend FTCA coverage to certain health centers that receive federal funding under § 330 of the PHSA, 42 U.S.C. § 254b, by authorizing the Department of Health and Human Services ("HHS") to "deem" them employees of the Public Health Service.  See 42 U.S.C. § 233(g)-(n).[1]

---

[1] The Federally Supported Health Centers Assistance Act of 1995, Pub. L. No. 104-73, 109 Stat. 777 (1995), subsequently removed the expiration date of December 31, 1995 for medical liability coverage under the FSHCAA of 1992, thereby making the deeming program permanent.  The FSHCAA of 1995 also clarified that § 224 of the Public Health Service Act covers any officer, governing board member, employee, and certain contractors of eligible health centers.  See Pub. L. No. 104-73, § 3.

To be considered for FTCA coverage under the FSHCAA, a federally-funded health center must submit an application to HHS.  The FSHCAA provides that "subject to the approval by the Secretary [of HHS] of an application under subparagraph (D), an entity described in paragraph (4) . . . shall be deemed to be an employee of the Public Health Service . . . ."  42 U.S.C. § 233(g)(1)(A).[2]  Subparagraph D states that "[t]he Secretary may not . . . deem an entity or an officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service . . . unless the entity has submitted an application for such deeming to the Secretary in such form and such manner as the Secretary shall prescribe."  Id. § 233(g)(1)(D).

Within thirty days after receipt of an application pursuant to § 233(g)(1)(D), the Secretary of HHS must determine whether the health center is to be deemed an employee of the Public Health Service.  Id. § 233(g)(1)(E).  "The determination of the Secretary that an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section shall apply for the period specified by the Secretary under subparagraph (A)."  Id.  With one exception not relevant

---

[2] Paragraph 4 of § 233(g) refers to "a public or non-profit private entity receiving Federal funds under section 254b of this title."  42 U.S.C. § 233(g)(4).

here, "[o]nce the Secretary makes the determination that an entity . . . is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding."  Id. § 233(g)(1)(F).

HHS has issued regulations, promulgated after notice and comment, to implement the deeming program for federally-funded health centers.  See 42 C.F.R. §§ 6.1-6.6.  The regulations provide, inter alia, that:

> Eligible entities will be covered . . . only on and
> after the effective date of a determination by the
> Secretary that they meet the requirements of [42
> U.S.C. § 224(h)].  In making such determination, the
> Secretary will receive such assurances and conduct
> such investigations as he or she deems necessary.

42 C.F.R. § 6.5.  The deeming program is administered by the Bureau of Primary Health Care ("BPHC"), a division of the Health Resources and Services Administration ("HRSA") within HHS. HRSA/BPHC provides guidance on the deeming program to health centers through Program Information Notices ("PINs") and Program Assistance Letters ("PALs") issued to the public.[3]

---

[3] PINs "define and clarify policies and procedures that grantees funded under Section 330 [of the PHSA] must follow.  [PALs] summarize and explain items of significance for health centers, including, for example, [HHS] program implementation activities, recently enacted laws, final regulations, and/or new HHS initiatives."  See HRSA, The Health Center Program: Policy

On April 12, 1999, HRSA/BPHC issued PIN 99-08, which describes the "process for applying and reapplying for coverage under the [deeming] program."  See BPHC Program Information Notice 99-08: Health Centers and the Federal Tort Claims Act, § 1 (Apr. 12, 1999), available at http://bphc.hrsa.gov/policy/ pin9908.htm ("PIN 99-08").  Under § 3 of PIN 99-08, in order to be deemed, "a grantee must complete an initial application that demonstrates that the grantee" meets the requirements under the FSHCAA.  Id. § 3.  Section 12 describes the initial deeming application process and states that "initial deeming applications cannot be part of any grant application.  Only the application in this PIN, submitted on its own, will be reviewed."  Id. § 12.  Section 13, in turn, describes the process for renewing a grantee's deemed status.  It provides:

> Health Centers must periodically apply for renewal of their deemed status.  This occurs at the end of the Health Center's project period.  An application for renewal of deemed status ("redeeming") is included as part of the single grant application for project period renewals.  This must be completed as part of the project period renewal application in order for the coverage under the FTCA to continue beyond the end of the project period.  Health Centers will be informed of the renewal of their deeming via the Notice of Grant Award."

Id. § 13.[4]

---

Information Notices & Program Assistance Letters, http://bphc.hrsa.gov/policy/.

[4] HRSA uses a "project period" system of funding by which multi-year projects are approved for federal financial support in

Pursuant to § 7 of PIN 99-08, a "subrecipient" (or "subgrantee") that receives § 330 grant funds through a deemed Health Center is also eligible for FTCA medial malpractice coverage.  Id. § 7.  An eligible subrecipient is defined as "an entity (not an individual contractor) that receives a grant or contract from a deemed Health Center to provide the full range of health services on behalf of the deemed Health Center and only for those services under the scope of the project."  Id.; see also 42 C.F.R. §§ 6.2, 6.3(b).[5]  Section 7 also describes the deeming application process for subrecipients:

> Subrecipients are required to meet the same deeming
> requirements as the eligible Health Center.
> Consequently, each subrecipient shall be required to
> submit a deeming application, through the eligible
> Health Center, in order to qualify for FTCA coverage.
> Ideally, the Health Center should submit its
> application and that of any subrecipient(s) at the
> same time.  However, a future application from a
> subrecipient can be reviewed independently.

PIN 99-08, at § 7.

---

their entirety, but are funded in annual increments called "budget periods."  See HHS Grants Policy Statement Pt. 1, at 35 (Jan. 1, 2007), available at http://www.hhs.gov/grantsnet/adminis/gpd.

[5] Section 6.2 defines "subrecipient" as "an entity which receives a grant or a contract from a covered entity to provide a full range of health services on behalf of the covered entity." 42 U.S.C. § 6.2.  Section 6.3(b) describes the eligibility of deeming for subrecipients:  "Entities that are subrecipients of grant funds . . . are eligible for coverage only if they provide a full range of health care services on behalf of an eligible grantee and only for those services carried out under the grant funded project."  Id. § 6.3(b).

On July 10, 2002, HRSA/BPHC changed the frequency with which health centers must apply for deeming.  See BPHC Information Notice 02-23: New Requirements for Deeming Under the Federally Supported Health Centers Assistance Act (July 10, 2002), available at http://bphc.hrsa.gov/policy/pin0223.htm ("PIN 02-23").  PIN 02-23 observed that under PIN 99-08, deemed health centers were required to "re-apply to be 'deemed' with every project period application."  Id.  Because the "length of project periods vary and in most cases are longer than 1 year," the "periods of deeming . . . varied from health center to health center."  Id.  "In order to bring consistency in the way all health centers are treated and improve the risk management of this program," PIN 02-23 changed the frequency with which health centers must reapply for FTCA coverage.  Specifically, PIN 02-23 provides:

> Effective October 1, 2002, all deemed health centers must reapply for malpractice protection under the FSHCAA each year.  The application to be used will be part of the fiscal year 2003 (and subsequent years) Single Grant Application.  All deemed grantees must complete the deeming portion of their Single Grant Application each year, beginning with budget periods on or after October 1, 2002, to continue receiving the medical malpractice protection provided by the FSHCAA.

Id. § 3.  PIN 02-23 does not expressly refer to any changes in the deeming requirements for subrecipients or subgrantees.

2.   The Ryan/Chelsea Center

The Ryan/Chelsea Center receives § 330 grant funding as a
subrecipient of a federally-funded community health center, the
William F. Ryan Community Health Center (the "WFR Center").  The
Ryan/Chelsea Center provides primary medical care to uninsured,
underinsured, and impoverished people in New York City.  On
February 26, 2002, the WFR Center submitted an initial deeming
application to HRSA/BPHC in order to obtain FTCA medical
malpractice liability coverage on behalf of its subrecipient,
the Ryan/Chelsea Center.  In a letter dated April 24, 2002,
HRSA/BPHC "deemed the [Ryan/Chelsea Center] to be an employee of
the Federal Government effective May 15, 2002, for the purposes
of section 224."  The April 24, 2002 letter does not indicate a
termination date for the Ryan/Chelsea Center's deemed status.

On September 5, 2002, the WFR Center submitted a redeeming
application on its own behalf to HRSA/BPHC.  In a Notice of
Grant Award ("NGA") dated December 5, 2002, HRSA/BPHC notified
the WFR Center that it had been "re-deemed an employee of the
Federal Government for the purposes of malpractice liability
protection under the Federal Tort Claims Act during the project
period [sic], December 1, 2002 through November 30, 2003."[6]

_____

[6] While the section in the NGA concerning redeeming described the
period during which the WFR Center was redeemed (i.e., December
1, 2002 through November 30, 2003) as corresponding to its
"project period," the first page of the NGA indicates that the

9

Although the NGA refers to the title of the project for which the WFR Center was receiving grant funds as the "Health Center Cluster," the NGA does not indicate that any subrecipient of the WFR Center, including the Ryan/Chelsea Center, was redeemed for the December 1, 2002 through November 30, 2003 budget period.[7]

In a letter dated May 15, 2005, the WFR Center notified HRSA/BPHC that it had "inadvertently omitted" from its redeeming applications for 2003 and 2004 a separate deeming application for the Ryan/Chelsea Center for those years.  The May 15, 2005 letter indicates that the WFR Center was therefore providing "[o]n behalf of the [Ryan/Chelsea Center] . . . a complete FTCA Deeming Application for the [Ryan/Chelsea Center]."  (Emphasis in original).  Attached to the letter was a completed deeming application form for the Ryan/Chelsea Center dated May 19, 2005.

---

WFR Center's project period actually extended from December 1, 2001 through November 30, 2004.  Presumably, the NGA section concerning redeeming intended to refer instead to the WFR Center's "budget period," which extended from December 1, 2002 through November 30, 2003.

[7] The December 5, 2002 NGA indicates that an additional $600,000 was being awarded to the WFR Center to support "Expanded Medical Capacity."  In an affidavit submitted in connection with this litigation, the Government represents that this $600,000 in funding for the December 1, 2002 through November 30, 2003 budget period was awarded specifically to support the work of the Ryan/Chelsea Center.

3.   This Litigation

     In March 2003, Bogues sought treatment at the Ryan/Chelsea
Center.  Bogues was seen by one of the Center's physicians, Dr.
Stewart, and was diagnosed as suffering from herpes zoster,
commonly known as shingles.  To treat Bogues' condition, Dr.
Stewart prescribed a pharmaceutical called Acyclovir.  Bogues
claims that the dosage of Acyclovir prescribed was inadequate to
treat the diagnosed condition and that he suffered a variety of
damages due to Dr. Stewart's negligent care.

     On July 29, 2005, Bogues filed a complaint in New York
Supreme Court against Dr. Stewart and the Ryan/Chelsea Center
alleging medical malpractice.  Bogues' complaint was timely
filed within the statute of limitations for medical malpractice
claims under New York law.  On October 6, 2005, the United
States Attorney for the Southern District of New York certified
pursuant to 28 U.S.C. § 2679(d) that Dr. Stewart and the
Ryan/Chelsea Center were operating within the scope of their
employment as employees of the Public Health Service at the time
they provided medical treatment to Bogues in March 2003.[8]  On
January 3, 2006, the state action was removed to this Court.

---

[8] In instances where a tort action is brought against a federally
funded public health center that has been deemed to be an
employee of the Public Health Service pursuant to 42 U.S.C.
§ 233(g), the Attorney General (or one of his designees) may
certify that the health center and its employees were acting
within the scope of their employment for purposes of FTCA.  See

On January 10, 2006, the Government filed a motion to substitute the United States as the defendant in the removed action on the ground that Dr. Stewart and the Ryan/Chelsea Center were deemed federal employees pursuant to the FSHCAA. The motion also sought to dismiss the removed action for lack of subject matter jurisdiction because Bogues had failed to exhaust his administrative remedies as required by the FTCA.  Based on the United States Attorney's prior certification that Dr. Stewart and the Ryan/Chelsea Center were acting within the scope of their employment as federal employees at the time of Bogues' medial treatment, the motion was granted and the case was dismissed.  See Bogues v. Stewart, No. 06 Civ. 11 (DLC), 2006 WL 1593986, (S.D.N.Y. June 12, 2006).[9]

On August 4, 2006, Bogues filed an administrative claim with HHS.  Bogues and HHS failed to reach a settlement.  On

---

28 U.S.C. § 2679(d); Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 80 (2d Cir. 2005).  The language of the FTCA certification provision, however, assumes that a health center is a federal employee.  See 28 U.S.C. § 2679(d)(2) ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of incident . . ., any civil action . . . shall be deemed to be an action or proceeding brought against the United States.").  Thus, certification is only relevant to the issue of whether the health center or its employees were acting within the scope of their employment, not whether they were deemed to be federal employees at the time of the conduct at issue.

[9] At the time, Bogues did not contest the United States Attorney's certification or the substitution of the United States as a defendant.  See Bogues, 2006 WL 1593986, at *2 n.1.

January 14, 2009, Bogues commenced the instant action against the United States pursuant to the FTCA.  The action was assigned to this Court on January 26 as related to Bogues' previously dismissed action.  On March 31, the parties submitted a Rule 26(f) report setting forth a proposed discovery schedule and highlighting a threshold issue, namely that Bogues' FTCA claim may be untimely unless subject to equitable tolling.  Although Bogues' August 2005 state court action against Dr. Stewart and the Ryan/Chelsea Center was commenced within the New York state 2.5-year statute of limitations, his administrative claim was not filed with HHS until August 4, 2006 -- well past the two-year limitations period for FTCA claims in 28 U.S.C. § 2401(b).

At a Rule 16 conference held on April 3, 2009, the parties were directed to brief the threshold issue of equitable tolling of the statute of limitations for Bogues' FTCA claim.  The parties were permitted to take limited discovery on the issue of equitable tolling.  On September 30, Bogues filed a motion for equitable tolling in which he argued, inter alia, that evidence uncovered during discovery demonstrated that Dr. Stewart and the Ryan/Chelsea Center were not deemed to be Public Health Service employees at the time of his medical treatment in March 2003. In its opposition, the Government disputed Bogues' assertion and maintained that Dr. Stewart and the Ryan/Chelsea Center were properly deemed to be federal employees in March 2003.  The

13

motion for equitable tolling became fully submitted November 10.
On December 18, the parties were ordered to submit supplemental
briefing on the issue of subject matter jurisdiction under the
FTCA, specifically whether Dr. Stewart and the Ryan/Chelsea
Center were deemed to be federal employees at the time of
Bogues' treatment.  After requesting and obtaining several
adjournments, the Government submitted its supplemental brief on
February 12, 2010.  Bogues submitted his supplemental brief on
February 26.


                          DISCUSSION

     The FTCA waives the United States' sovereign immunity for
certain classes of tort claims and provides that the federal
district courts shall have exclusive jurisdiction over damages
claims against the United States for injury or loss of property,
or for personal injury or death "caused by the negligent or
wrongful act or omission of any employee of the Government while
acting within the scope of his office or employment."  28 U.S.C.
§ 1346(b)(1); Celestine v. Mount Vernon Neighborhood Health
Ctr., 403 F.3d 76, 80 (2d Cir. 2005).  As discussed above, the
FSHCAA extends FTCA coverage to federally-funded health centers,
and certain of their affiliated individuals, by authorizing HHS
to "deem" them to be employees of the Public Health Service.
See 42 U.S.C. § 233(g)-(n).  In order to bring an FTCA action

                              14

against the United States for medical malpractice committed by a health center or one of its physicians, the health center or physician must have been deemed to be a federal employee at the time of the alleged wrongful conduct.

Neither the Ryan/Chelsea Center nor Dr. Stewart was deemed by HHS to be an employee of the Public Health Service in March 2003 when Bogues received medical treatment from them.[10]  The WFR Center applied for initial deeming on behalf of the Ryan/Chelsea Center on February 26, 2002.  On April 24, HHS notified the Ryan/Chelsea Center that it had been deemed "to be an employee of the Federal Government effective May 15, 2002."  While the initial deeming letter does not specify a termination date for the Ryan/Chelsea Center's deemed status, the Government asserts, and Bogues does not contest, that under PIN 99-08, the Ryan/Chelsea Center was deemed to be a federal employee until the end of the WFR Center's project period, or November 30, 2004.[11]

---

[10] While the Government points out that the Second Circuit has not addressed the question of whether, and to what extent, a court may review a deeming determination by HHS, see Dalli v. Frech, 70 Fed.Appx. 46, 47, 2003 WL 21728991, at *1 (2d Cir. July 24 2003), it does not contest that a court may review the threshold question of whether HHS made a deeming determination at all.

[11] The WFR Center's project period, as indicated on the December 5, 2002 NGA, extended from December 1, 2001 through November 30, 2004.

The duration of the Ryan/Chelsea Center's deeming was cut short, however, by HRSA/BPHC's issuance of PIN 02-23 in July 2002.  PIN 02-23 changed the frequency with which health centers must apply for redeeming.  It provides:  "Effective October 1, 2002, all deemed health centers must reapply for malpractice protection under the FSHCAA each year."  PIN 02-23, § 3 (emphasis added).  In order "to continue receiving the medical malpractice protection provided by the FSHCAA," PIN 02-23 requires that "[a]ll deemed grantees must complete the deeming portion of their Single Grant Application each year, beginning with budget periods on or after October 1, 2002."  Id. (emphasis added).  Because the WFR Center's next budget period ran from December 1, 2002 through November 30, 2003, it was required to apply for redeeming as part of its Single Grant Application submitted for that budget period.  The WFR Center was similarly required to apply for redeeming on behalf of its subrecipient, the Ryan/Chelsea Center, for that budget period.  It neglected to do so.  Because the WFR Center failed to submit an application for redeeming on behalf of the Ryan/Chelsea Center for the December 1, 2002 through November 30, 2003 budget period, neither the Ryan/Chelsea Center nor Dr. Stewart was deemed to be a federal employee during that period.

Although PIN 02-23 does not expressly state that the annual redeeming requirement extends to subrecipients, such as the

Ryan/Chelsea Center, the only possible interpretation of PIN 02-23, when read in conjunction with the FSHCAA, HHS regulations, and PIN 99-08, is that the requirement does so extend.  HHS regulations and PIN 99-08 make the eligibility of subrecipients for FTCA malpractice liability coverage expressly dependent on whether the main grantee is itself deemed.  See 42 C.F.R. § 6.2 (defining "subrecipient" as "an entity which receives a grant or a contract from a covered entity to provide a full range of health services on behalf of the covered entity" (emphasis added)); PIN 99-08, § 7 (defining "subrecipient" as "an entity . . . that receives a grant or contract from a deemed Health Center to provide the full range of health services on behalf of the deemed Health Center . . ." (emphasis added)).  Because PIN 02-23 requires "all health centers" to be redeemed on an annual basis, and subrecipients' eligibility for FTCA coverage depends on the deeming status of the main grantee, it necessarily follows that subrecipients' deeming must also be reassessed each year.

Furthermore, the FSHCAA and HHS regulations themselves do not distinguish between "main grantees" and "subrecipients" with respect to the deeming process, but rather refer only to eligible "entities."  See 42 U.S.C. § 233(g)(1)(D); 42 C.F.R. §

6.5.[12]   HHS regulations state that all "eligible entities,"
which specifically include "subrecipients," see 42 C.F.R.
§§ 6.2, 6.3(b), must comply with the deeming process described
in 42 C.F.R. § 6.5.  Likewise, PIN 99-08 explicitly states that
"[s]ubrecipients are required to meet the same deeming
requirements as the eligible Health Center."  See PIN 99-08,
§ 7.  Thus, there is no textual basis for limiting the
application of the annual redeeming requirement in PIN 02-23 to
main grantees.

     To draw a distinction between main grantees and
subrecipients with respect to the annual redeeming requirement
would also defeat the purpose behind PIN 02-23.  PIN 02-23
states that the purpose of making uniform the periods of deeming
for "all health centers" is "to bring consistency in the way all
health centers are treated and improve the risk management of
[the] program."  PIN 02-23, § 2.  This purpose would be
undermined if subrecipients continued to be deemed for variable,
often multi-year, durations (as was the case under PIN 99-08),

---

[12] The FSHCAA states that "[t]he Secretary may not . . . deem an
entity . . . to be an employee of the Public Health Service
. . . unless the entity has submitted an application for such
deeming to the Secretary in such form and such matter as the
Secretary shall prescribe."  42 U.S.C. § 233(g)(1)(D) (emphasis
added).  Likewise, HHS regulations provide that "[e]ligible
entities will be covered . . . only on and after the effective
date of a determination by the Secretary that they meet the
requirements of [42 U.S.C. § 224(h)]."  42 C.F.R. § 6.5
(emphasis added).

while main grantees were deemed only for one year.  Not only would this create a confusing and cumbersome regulatory regime, but it could result in an absurd situation where HHS declines to redeem a main grantee, but its subrecipients continue to be deemed until the end of the main grantee's project period.

Failing to apply the annual redeeming requirement to subrecipients would also create tension with other provisions of PIN 99-08 that are still in full force and effect.[13] Administrative guidelines, like statutes and regulations, should be interpreted in the broader context of the regulatory framework as a whole, and in such a way that "no clause, sentence, or word shall be superfluous, void, or insignificant." Jacobs v. New York Foundling Hosp., 577 F.3d 93, 99 (2d Cir. 2009) (statutory interpretation).  Section 7 of PIN 99-08 expressly states that "[s]ubrecipients are required to meet the same deeming requirements as the eligible Health Center." Accordingly, subrecipients must "submit a deeming application, through the eligible Health Center, in order to qualify for FTCA coverage" and "the Health Center should submit its application

_____

[13] Except for altering the frequency with health centers must apply for deeming, the issuance of PIN 02-23 did not affect PIN 99-08.  Unlike PIN 99-08, PIN 02-23 did not "supersede" prior PINs concerning the deeming process.  See PIN 99-08, § 1 ("This [PIN] supersedes PINS 93-07, 93-19, and 96-07.").  Instead, PIN 02-23 "supplements existing guidance of the [BPHC] regarding malpractice liability protection of the [FTCA] for section 330 grantees (Health Centers) deemed under the [FSHCAA]."  PIN 02-23, § 1 (emphasis added).

and that of any subrecipient(s) <u>at the same time</u>."  PIN 99-08,
§ 7 (emphasis added).  If the annual redeeming requirement did
not apply to subrecipients, then they would no longer be
"required to meet the same deeming requirements" and there would
be no reason to submit their deeming applications "at the same
time" as main grantees.  Section 7 of PIN 99-08 would be
rendered substantially void, a result which is to be avoided.

In sum, because the WFR Center never submitted an
application for redeeming on behalf of the Ryan/Chelsea Center
for the December 1, 2002 through November 30, 2003 budget
period, neither the Ryan/Chelsea Center nor Dr. Stewart was
deemed to be an employee of the Public Health Service in March
2003 when Bogues received medical treatment.  Accordingly, there
is no subject matter jurisdiction under the FTCA.

The Government's principal argument in support of subject
matter jurisdiction is that PIN 02-23 is ambiguous as applied to
subrecipients, and therefore the Court should defer to the
interpretation of PIN 02-23 set forth in the deposition and
affidavits of Suma Nair ("Nair"), the Director of the Office of
Quality and Data within HRSA/BPHC.  The Government claims that
PIN 02-23 requires only "deemed grantees" to file annual
redeeming applications for the next "budget period" as part of a
"Single Grant Application."  It is therefore ambiguous, the
Government contends, whether the annual redeeming requirement

applies to a subrecipient, such as the Ryan/Chelsea Center,
since it is not a "deemed grantee," does not have a "budget
period," and does not file a "Single Grant Application."  As
explained above, however, PIN 02-23, when read in conjunction
with the FSHCAA, HHS regulations, and PIN 99-08, unambiguously
applies to subrecipients as well as main grantees.  Section 7 of
PIN 99-08 clearly states that "[s]ubrecipients are required to
meet the same deeming requirements as the eligible Health
Center."  To find that PIN 02-23 is ambiguous, as the Government
urges, would require the Court to disregard the plain language
of § 7.[14]

---

[14] The Government's contention that PIN 02-23 is ambiguous
because subrecipients do not have "budget periods" is
unavailing.  HHS regulations provide that subrecipients are
eligible for FTCA coverage only if they provide the same health
care services as those carried out by the main grantee under the
"grant funded project."  See 42 C.F.R. § 6.3(b).  The Government
does not dispute that subrecipients share the same "project
period" as the main grantee.  Indeed, the Government relies on
this fact in support of its argument that the duration of the
Ryan/Chelsea Center's deemed status extended to the end of the
WFR Center's project period, i.e., November 30, 2004.  Per HHS
policy, a project period is divided into one-year "budget
periods" for funding purposes.  The Government provides no
convincing explanation for why this policy should not extend to
subrecipients.  Moreover, the December 5, 2002 NGA for the WFR
Center covers the "Health Center Cluster," which presumably
includes the Ryan/Chelsea Center.  Further, the NGA indicates
that an additional $600,000 in funding was being provided for
that budget period to support "Expanded Medical Capacity," which
the Government represents is a reference to support for the
Ryan/Chelsea Center.  Thus, contrary to the Government's
contention, the WFR Center's budget periods would also appear to
apply to the Ryan/Chelsea Center.

Because PIN 02-23 is unambiguous, there is no need to defer
to the interpretation of PIN 02-23 set forth in Nair's
deposition or affidavits.  United Airlines, Inc. v. Brien, 588
F.3d 158, 172 (2d Cir. 2009) ("Deference to an agency's
statutory interpretation is called for only when the devices of
judicial construction have been tried and found to yield no
clear sense of congressional intent." (citing Gen. Dynamics Land
Sys. v. Cline, 540 U.S. 581, 600 (2004)).  Even if PIN 02-23
were ambiguous, the interpretation urged by the Government,
which is set forth only in the deposition transcript and
affidavits of an HHS official, is nothing more than a post-hoc
litigation position and is therefore unworthy of any deference.
See Mason v. American Tobacco Co., 346 F.3d 36, 43 (2d Cir.
2003) ("[C]ourt need not defer to statutory interpretation that
is nothing more than the litigation position of agency counsel
that is wholly unsupported by regulations, rulings, or
administrative practice." (citation omitted)).

Moreover, the Government's interpretation of PIN 02-23 is
wholly unconvincing.  Nair contends that "HRSA . . . did not
understand or intend for PIN 2002-23 to withdraw FTCA coverage
from deemed entities that had previously been deemed under PIN
1999-08 for the duration of the project period for which they
had previously been deemed."  As such, PIN 02-23 did not change
the duration of the WFR Center's or the Ryan/Chelsea Center's

22

deemed status, which Nair contends still extended through the
end of the WFR Center's project period, or November 30, 2004.
Nair's interpretation is directly contradicted by the text of
PIN 02-23, which states unambiguously:  "Effective October 1,
2002, . . . [a]ll deemed grantees must complete the deeming
portion of their Single Grant Application each year, beginning
with budget periods on or after October 1, 2002, to continue
receiving the medical malpractice protection provided by the
FSHCAA."  PIN 02-23, § 3.  Accordingly, the Government's
interpretation of PIN 02-23 is unconvincing and thus unworthy of
any deference.

The Government also ignores the fact that the WFR Center
obviously understood that its own deeming would not last through
the end of its project period, and that PIN 02-23 required it to
apply for redeeming for the next budget period beginning after
October 1, 2002.  The WFR Center thus submitted an application
for redeeming on its own behalf on September 5, 2002, and was
notified by HRSA/BPHC in the December 5, 2002 NGA that it had
been redeemed through November 30, 2003.  The WFR Center did
not, however, submit an application for redeeming on behalf of
its subrecipient, the Ryan/Chelsea Center, and the December 5,
2002 NGA makes no mention of the Ryan/Chelsea Center being
redeemed.  The WFR Center itself acknowledged its failure to
submit a redeeming application on behalf of the Ryan/Chelsea

23

Center for the December 1, 2002 through November 30, 2003 budget period (as well as the 2004 budget period) in its May 15, 2005 letter to HRSA/BPHC.

The Government next argues that the FSHCAA prohibits PIN 02-23 from withdrawing or shortening the duration of HHS' prior deeming for the Ryan/Chelsea Center.  This argument is without merit.  The FSHCAA provides, in pertinent part, that the "determination of the Secretary that an entity . . . is deemed to be an employee of the Public Health Service . . . shall apply for the period specified by the Secretary under subparagraph (A)."  42 U.S.C. § 233(g)(1)(E).  By its terms, subsection (E) does not expressly limit the authority of HHS to modify the duration of its deeming determination.  Rather, it states only that a deeming determination shall apply for the period specified by HHS pursuant to § 233(g)(1)(A).  The Government does not contend that HHS' discretion is limited with respect to specifying the duration of a deeming determination under § 233(g)(1)(A)

Furthermore, the Government's interpretation of subsection (E) runs counter to the broad authority that the FSHCAA grants HHS to administer the deeming program -- broad authority that the Government itself contends that HHS possesses.  The FSHCAA provides that an entity may not be deemed "unless the entity has submitted an application for such deeming to the Secretary in

such form and such manner as the Secretary shall prescribe." 42
U.S.C. § 233(g)(1)(D) (emphasis added).  It is beyond cavil that
HHS' broad discretion to "prescribe" the "form" and "manner" of
the deeming application process encompasses the power to alter
the frequency with which grantees, and their subrecipients, must
apply to continue their FTCA malpractice liability coverage.[15]

Lastly, the Government's invocation of § 233(g)(1)(F) is
misplaced.  Subsection (F) provides that "[o]nce the Secretary
makes the determination that an entity . . . is deemed to be an
employee of the Public Health Service for purposes of this
section, the determination shall be final and binding upon the
Secretary and the Attorney General and other parties to any
civil action or proceeding."  Id. § 233(g)(1)(F).  By its terms,
subsection (F) applies only "[o]nce the Secretary makes the
determination" that an "entity" is deemed to be an employee of
the Public Health Service.  It has no application where, as
here, the "entity" did not submit the required application such
that it could be deemed (or redeemed) by HHS to be an employee
of the Public Health Service pursuant to § 233(g)(1)(A).
Because the WFR Center did not apply for redeeming on behalf of
the Ryan/Chelsea Center for the budget period December 1, 2002

---

[15] In her deposition, Nair acknowledged that HHS has the
authority to alter the frequency with which grantees must apply
for redeeming.  In reference to PIN 02-23, Nair stated that
"effective October 1st, 2002, health centers need to reapply
under this annual deeming process."

through November 30, 2003, HHS had no opportunity to make a
determination that the Ryan/Chelsea Center or Dr. Stewart was an
employee of the Public Health Service which is "final and
binding" in this action under § 233(g)(1)(F).  Accordingly, this
action must be dismissed for lack of subject matter jurisdiction
under the FTCA.

### CONCLUSION

Bogues' claims under the FTCA are dismissed for lack of
subject matter jurisdiction without prejudice to refiling in
state court.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:     New York, New York
           March 22, 2010

                              _____
                                     DENISE COTE
                              United States District Judge

26